## THE HARRY B. HOLLINS. THE TIP TOP. THE ANNIE L.

(District Court, E. D. New York.    October 2, 1903.)

1. WHARVES—MANNER OF USE—EXTENSION BEYOND LIMITS FIXED BY LAW.
   Where the bulkhead line of a dock is where it has been maintained for
   years, and since a time before there was any statute on the subject, per-
   sons using the bulkhead for mooring vessels in the customary manner,
   with the consent of the city, cannot be deemed in fault therefor, although
   it extends farther into the river than the line as established by law.

2. SAME—USE OF SLIP BY FERRYBOAT.
   A ferryboat leasing a slip has no right to appropriate the waters abut-
   ting the bulkhead below such slip to the extent of shutting out the use
   of such bulkheads in the customary manner for the mooring of vessels.

3. COLLISION—VESSEL AT WHARF—FERRYBOAT ENTERING SLIP.
   A ferryboat held in fault for collision with a scow which was moored
   outside of another vessel at a bulkhead adjoining the ferryboat's slip,
   on the ground that she failed to exercise due care in entering the slip.

In Admiralty.    Suits for collision.

Louis B. Adams, for Hastorf.

Wilcox & Green and Herbert Green, for Brooklyn Ferry Co. and
ferryboat Hollins.

John F. Foley, for scow Tip Top, tug Annie L., and Murray &
Reid.

THOMAS, District Judge.    At about 9 a. m. the tug Annie L.
placed the sand scow Tip Top outside of dumper No. 1R, at the
bulkhead between Forty and Forty-First streets, Manhattan.    The
scow California lay ahead of No. 1R.    All of the scows were there
by permission of the lessee of the dock, and No. 1R was suitably
close to the bulkhead, carefully moored.    Ericsen, who, for Brown
& Fleming, had charge of the dumper and bulkhead, states that he
helped to moor No. 1R, and showed the very careful and thorough
manner of doing it.    His evidence, supported by that of other wit-
nesses connected with the moored vessels, is preferred to the evi-
dence of the witnesses for the ferryboat, that No. 1R was hanging
off from 10 to 15 feet from the bulkhead.    Such witnesses were
wrong with reference to the location of the vessels, as they placed
the California in an incorrect position.    This mistake of the ferry
company's witnesses may not be of great consequence, but is some
evidence of lack of careful observation of the conditions.    More-
over, the tide, which was about half flood, set on to the dock, and
would tend to keep the boats up, rather than to allow them to hang
off.    The Tip Top and No. 1R occupied about 60 feet in width,

while the California, ahead of them, was about 120 feet in length, and occupied the remaining dock space above the vessels mentioned.   Counsel for the ferryboat gives a very good description of the ferry slip, as follows:

"The structure does not extend directly out into the river, with its sides nearly or quite at right angles with the bulkhead, but the inner side of the slip is almost parallel with the actual bulkhead, the rack of that side being 39.06 feet out from the bulkhead.   The exterior line of the outer rack is 150 feet from the bulkhead and pierhead line as established by law.   The further side of the inner rack is 39.08 feet.   The mouth of the slip is about 85 feet wide, and the slip narrows towards the bridge.   Because of this plan of construction, the ferryboats, when approaching the slip from their Brooklyn terminus at Broadway, are obliged to proceed inshore on a course about parallel with the bulkhead.   This character of slip was necessitated by the fact that the ferry company was permitted to build out into the river not more than 150 feet from the established bulkhead and pierhead line, and that would have been insufficient for the usual type of slip.   'The boat was 200 feet long, and the bridge is about 70, and the backing for the bridge or platform, adding 10 feet, made 280 feet.'"

In making her slip on the flood tide, the Hollins struck the Tip Top, carrying her away from her mooring to No. 1R, and against the California, and the injuries to the Tip Top, California, and Hollins are involved in the above actions.   The evidence of the captain of the Hollins is that, on the tide then running half flood, he could not enter his slip without striking the Tip Top, although the Tip Top had been in the same position for several hours, and the ferryboats of the same line had been passing her every 15 minutes, one of them but 15 minutes before the accident, which occurred about 12:15.

It is urged on the part of the Hollins that the actual bulkhead line extends somewhat farther into the river than the lawful bulkhead line, and that therefore the vessels had no right to lie at such point.   The actual bulkhead line is the line shown on the maps of the city, and has been in existence for many years, and was there prior to the passage of the statute invoked by the ferry company to condemn it.   It was the de facto line, and without it the bulkhead could not be used at all.   Persons innocently using the bulkhead with the assent of the city should not be deemed in the wrong.   But in any case the use of the line was not a cause contributing to the accident.   The presence of the bulkhead line there was one of the conditions that attended the accident, but did not cause it.   The cause was the lack of proper calculation, whereby the captain allowed his boat to go too far to port, with the result mentioned. The accident happened in the daytime, with a very light wind, and with no condition that was unusually dangerous at that place, although it did require considerable skill to take the vessel into the slip, on account of the proximity of the slip to the docks, and its peculiar relation thereto.   But other vessels did it that morning, and continued to do it, and no good reason appears for the Hollins failing to do it at the time of the accident.   It is considered that a ferryboat leasing a slip has no right to appropriate the waters abutting the bulkheads below such slip, to the extent of shutting out the use of such bulkhead in the customary manner, and it had

quite often happened that one boat laid outside of another against such bulkhead. In fact, that is a common method of employing similar mooring places in the harbor.

It results from the foregoing views that the libelants Murray & Reid will have a decree against the ferryboat Hollins; that the libel filed by the Brooklyn Ferry Company against the scow Tip Top and steam tug Annie L. is dismissed; that the libelant Hastorf will have a decree against the Hollins, but that the libel is dismissed as to the scow Tip Top and the steam tug Annie L. No costs will be allowed the Tip Top or the Annie L. in the Hastorf action.